Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| | | |
|---|---|---|
| PAUL PLAZA DEL VALLE<br><br>**Apelante**<br><br>V.<br><br>RETAIL CONTRACTORS OF PR INC.<br><br>**Apelado** | KLAN202500250 | **APELACIÓN**<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm. SJ2022CV10804<br><br>Sobre:<br>Despido Injustificado, Represalia |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Romero García y la Jueza Martínez Cordero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 5 de mayo de 2025.

El 26 de marzo de 2025, el Sr. Paul Plaza del Valle (señor Plaza Del Valle o apelante) compareció ante nos mediante *Apelación* y solicitó la revisión de una *Sentencia* que se emitió y notificó el 18 de marzo de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Querella* que presentó el señor Plaza Del Valle. En consecuencia, condenó a Retail Contractors of Puerto Rico Inc. (Retail Contractors o apelado) el pago de $50,000.00 por sufrimientos y angustias mentales; $67,764.56 por concepto de salarios dejados de devengar; y, $14,720.57 en concepto de honorarios de abogado.

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen recurrido.

**I.**

El 13 de diciembre de 2022, el señor Plaza Del Valle presentó una *Querella* por despido injustificado y represalias al amparo de la Ley Núm. 80 del 30 de mayo de 1976, según enmendada, mejor conocida como la *Ley sobre Despidos Injustificados*, 29 LPRA sec. 185a *et seq.* (Ley Núm. 180-1976) y la Ley Núm. 115 de 20 de diciembre del 1991, según enmendada, mejor conocida como *Ley de Represalias contra el Empleado por Ofrecer Testimonio,* 29 LPRA sec. 194 *et seq.* (Ley Núm. 115-1991) en contra de Retail Contractors.[1] Cabe precisar que, dicha reclamación fue incoada a tenor con el procedimiento sumario de reclamaciones laborales establecido por la Ley Núm. 2 del 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118, *et. seq.* (Ley Núm. 2-1961).

En la aludida *Querella*, el apelante alegó que trabajó para Retail Contractors desde el mes de junio de 2021 hasta el 10 de noviembre de 2021, fecha en la que fue despedido sin justa causa. Sostuvo que, su despido fue el resultado de haber servido como testigo ante la Policía de Puerto Rico en una querella presentada por su compañero de trabajo el Sr. Cristian Romero Adorno, por una agresión de parte del Sr. Paul Scaramuzzin.

Indicó que, luego de haber fungido como testigo en referida querella, fue transferido de un primer turno (aproximadamente 7:00 a.m. a 4:00 p.m.) en el área metropolitana donde se le proveía alojamiento, a un tercer turno (aproximadamente 10:00 p.m. a 5:00 a.m.) en el Sam's de Mayagüez. Por consiguiente, manifestó que fue despedido apenas unos días después de haberse presentado a su trabajo en Mayagüez. Por lo cual, solicitó la mesada conforme a la Ley Núm. 80, *supra,* y los remedios dispuestos en la Ley Núm. 115-

---

[1] *Véase*, págs. 1-5 del apéndice del recurso.

1991, *supra,* por haber sido objeto de represalias por su participación en una actividad protegida.

El 27 de diciembre de 2022, Retail Contractors presentó su *Contestación a Querella.*[2] Allí, alegó que no medió despido injustificado ni se tomó represalias en contra del apelante. Sostuvo que el señor Plaza Del Valle simplemente abandonó su trabajo por falta de transportación.

Tras varios tramites procesales los cuales no son necesarios pormenorizar, el 18 de marzo de 2025, el TPI dictó y notificó una *Sentencia.*[3] Mediante ésta, luego de aquilatar la prueba documental y testifical, el TPI formuló cuarenta y tres (43) determinaciones de hechos. A base de estos hechos y el derecho aplicable resolvió que, el despido del apelante fue injustificado y que éste fue víctima directa de represalias por parte de su patrono, Retail Contractors. A tales efectos, el TPI dispuso lo siguiente:

> [El señor Plaza] tiene derecho a indemnización básica equivalente a tres (3) meses de salario. 29 L.P.R.A. 185a. De igual forma, la prueba admitida demostró que laboraba en promedio 40 horas a la semana más 8 horas extraordinarias pagadas a tiempo y medio, lo que equivale a un salario semanal de $520.00 y/o $2,253.33 al mes. Así las cosas, su mesada asciende a $6,759.99.

Asimismo, determinó que el apelante tenía derecho a los remedios disponible en la Ley Núm. 111-1991, *supra.*[4] Así, concluyó que el señor Plaza Del Valle tenía derecho a una compensación de $33,882.28[5] por salarios dejados de devengar. Por consiguiente,

---

[2] Id., págs. 6-12.

[3] Id., págs. 40-53.

[4] (b) Cualquier persona que alegue una violación a esta ley podrá instar una acción civil en contra del patrono dentro de tres (3) años de la fecha en que ocurrió dicha violación y solicitar se le compense por los daños reales sufridos, las angustias mentales, la restitución en el empleo, los salarios dejados de devengar, beneficios y honorarios de abogado. La responsabilidad del patrono con relación a los daños y a los salarios dejados de devengar será el doble de la cuantía que se determine causó la violación a las disposiciones de esta ley. Art. 2(b) de la Ley Núm. 115 de 1991, 29 LPRA sec. 194b.

[5] Este cómputo se llevó a cabo multiplicando el salario mensual del señor Plaza de $2,253.33 mientras trabajó para Retail Contractors por un periodo de desempleo parcial de 18 meses; $2,253.33 x 18 meses = **$40,559.00**. A dicho total, se le restó los ingresos generados por el apelante durante mencionado periodo. A esos fines, según surge del dictamen, el señor Plaza generó $3,210.00 trabajando en Econo y $3,466.66 pintando escuelas para un total de **$6,676.66**, lo cual se le resta al $40,559.00 para un valor total de **$33,882.28**; $40,559.00 - $6,677.66 = $33,882.28.

determinó que el caso de *Ramirez Ferrer v. Conagra Foods PR*, 175 DPR 799 (2009)[6] fungía como un punto de base comparativa para la valoración de daños morales sufrido por el apelante en el presente caso. Ante ello, resolvió que tomando en consideración las particularidades del caso de marras, valoró los daños morales base sufridos por el señor Plaza Del Valle en la suma de $25,000.00.

Por lo cual, declaró **Ha Lugar** la *Querella* presentada por el señor Plaza Del Valle. En consecuencia, condenó a Retail Contractors el pago de $50,000.00[7] por sufrimientos y angustias mentales, $67,764.56.00[8] por concepto de salarios dejados de devengar y $14,720.57 en concepto de honorarios de abogado.

Inconforme con este dictamen, el 26 de marzo de 2025, el apelante presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **Erró el TPI al adjudicar en $25,000.00 la partida de daños y sufrimientos mentales.**

> **Erró el TPI al no actualizar al valor presente y al valor actual la partida de daños adjudicada.**

> **El TPI no siguió completamente la metodología establecida por el Tribunal Supremo para valorar los daños.**

> **El TPI erró al no conceder el valor presente y el valor actual del precedente base usado para guiar su dictamen de daños no los aplicó.**

> **El dictamen del TPI no consideró el efecto inflacionario en el precedente base utilizado.**

Atendido el recurso, el 1 de abril de 2025, emitimos una *Resolución* concediéndole a la parte apelada hasta el 8 de abril de 2025 para presentar su alegato en oposición. Oportunamente, el 7 de abril de 2025, Retail Contractors presentó su *Alegato en*

---

[6] En referido caso se concedió una partida de **$30,000.00** por concepto de daños y angustias mentales. Conforme a las exigencias de nuestro ordenamiento, el TPI actualizó dicha partida al presente para un valor actual de **$35,462.03**.

[7] Partida calculada al aplicar la penalidad del doble que concede la Ley Núm. 115-1991, *supra.*

[8] Partida calculada al aplicar la penalidad del doble que concede la Ley Núm. 115-1991, *supra.*

*Oposición de la Apelada* y negó que el TPI cometiera los errores que el apelante le imputó.

Con el beneficio de la comparecencia de ambas partes procedemos a resolver el asunto ante nos. *Veamos.*

**II.**

Valorar los daños es uno de los ejercicios de la función judicial más complejos, puesto que implica adjudicar un valor monetario a un daño que solamente puede ser aprehendido en toda su extensión por quien lo sufre. Tan es así que, en innumerables ocasiones nuestro más Alto Foro ha manifestado que "la tarea judicial de estimar y valorar los daños resulta difícil y angustiosa, debido a que no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas." *Herrera, Rivera v. S.L.G. Ramírez-Vincéns,* 179 DPR 774, 784 (2010). Asimismo, es norma retirada que los foros apelativos no deben intervenir con "la estimación de los daños que los tribunales de instancia realicen, salvo cuando la cuantía concedida advenga ridículamente baja o exageradamente alta." Íd., pág. 784-785. Lo anterior responde al hecho de que, la valoración de daños está sujeta a un grado de especulación que conlleva elementos subjetivos como la discreción, el sentido de justicia y la conciencia humana del juzgador de los hechos. Íd.

Apoyado en lo anterior, el Tribunal Supremo ha sido enfático en que a la hora de evaluar si la compensación concedida es ridículamente baja o exageradamente alta, se debe examinar la prueba desfilada ante el foro primario y las cuantías que se otorgaron en casos similares resueltos anteriormente. *Santiago Montanez v. Fresenius Medical,* 195 DPR 476, 491 (2016). En tal sentido, las indemnizaciones que se concedieron en casos anteriores constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones que se otorgaron en el foro de primera

instancia. Ello, aun cuando se debe reconocer que no existen dos (2) casos exactamente iguales y que cada uno es distinguible según sus circunstancias Íd. Ahora bien, estas compensaciones de los casos anteriores deben ajustarse al valor presente. Íd. Sobre este particular, el Tribunal Supremo ha establecido la siguiente metodología:

> En *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra, acogimos el método que recomendó el exjuez Antonio Amadeo Murga (Amadeo Murga) para actualizar al valor presente las compensaciones otorgadas en casos similares anteriores. Conforme a ese método, utilizamos el cambio en el poder adquisitivo del dólar a través del tiempo para obtener el ajuste por inflación. A su vez, el valor adquisitivo del dólar lo obtuvimos del índice de precios al consumidor que prepara el Departamento del Trabajo y Recursos Humanos (Departamento del Trabajo). Una vez obtenido el ajuste por inflación, realizamos un ajuste adicional por el crecimiento económico ocurrido entre el año del caso que se utiliza como referencia y el año cuando se dictó sentencia en el caso que teníamos ante nuestra consideración.
>
> [...]
>
> Recientemente, en *Rodríguez et al. v. Hospital et al.*, [186 DPR 889 (2012)], reconocimos que no hay consenso entre los expertos en cuanto al método que debe utilizarse para actualizar las compensaciones concedidas en el pasado y optamos por acoger el método que utiliza el índice de precios al consumidor con el 2006 como año base. Empero, rechazamos realizar el ajuste que recomendó Amadeo Murga y adoptamos la postura del Prof. José Julián Álvarez González, quien desfavorece que se haga un ajuste adicional por el crecimiento económico cuando se utiliza el nuevo índice de precios al consumidor. Así, concluimos que cuando utilizamos un índice de precios al consumidor cuyo año base es reciente, es innecesario realizar el ajuste que señala Amadeo Murga como segunda parte del proceso de actualización de las partidas concedidas *Rodríguez et al. v. Hospital et al.* Íd., págs. 495–97 (citas omitidas).

Del mismo modo, el Tribunal Supremo de Puerto Rico ha advertido a los jueces y juezas sobre la importancia de detallar en sus dictámenes los casos que se utilicen como referencia o punto de partida para la estimación y valoración de daños y el cómputo realizado para establecer las cuantías que se concedan. Íd., pág. 493. De la misma forma nuestro más Alto Foro expresó que:

> Este llamado a los jueces y las juezas cobra importancia ante la necesidad imperante de instruir a las partes y a los miembros de la profesión jurídica en torno al método que se utiliza en ese difícil y angustioso proceso de estimar y valorar los daños. Habida cuenta de que esa tarea lleva consigo cierto grado de especulación, es forzoso explicar qué casos se utilizan como referencia y cómo las cuantías concedidas se ajustan en esos casos anteriores al caso que el tribunal tiene ante su consideración. Íd.

En resumen, a la hora de valorizar los daños, se ha establecido que los juzgadores de los hechos deben realizar un ejercicio de dos pasos el cual se estableció en *Santiago Montañez v. Fresenius Medical, supra. Sucn. Mena Pamias et al. v. Meléndez et al*, 212 DPR 758, 771 (2023). El primer paso es evaluar aquellos casos comparables que serán utilizados como punto de partida para determinar las cuantías, los cuales deberán ser detallados en los dictamines de los foros primarios y el segundo paso es que los tribunales sentenciadores deberán tomar en consideración "las circunstancias particulares del caso considerado ante el tribunal". Íd., pág. 770. Es decir, el juez o la jueza no puede descansar meramente en un cálculo matemático. Íd., pág. 771.

**III.**

En el presente caso, el apelante nos solicitó la revisión de una *Sentencia* que el TPI emitió y notificó el 18 de marzo de 2025. Mediante la discusión conjunta de sus cinco (5) señalamientos de error, el apelante argumentó que el TPI incidió al adjudicar en $25,000.00 la partida de daños y sufrimientos mentales. Sostuvo que, los tribunales al momento de hacer la valoración de los daños y adjudicar la indemnización económica están obligados a realizar un análisis comparativo de otros casos similares en daños. De igual forma, esbozó que los foros judiciales están compelidos a actualizar las partidas concedidas en los casos comparativos, a tenor con las metodologías adoptada por el Tribunal Supremo.

Además, alegó que el TPI no concedió el valor actual del caso precedente, a saber, *Ramírez Ferrer v. Conagra Foods PR, supra,* de acuerdo con la metodología impuesta por el Máximo Foro. Indicó que, al aplicar la fórmula según adoptada en nuestro ordenamiento, se obtiene un valor actualizado de **$35,462.03**, distinto a lo otorgado en el dictamen, **$25,000.00**. Ante ello, arguyó que el TPI incurrió en un abuso de discreción al apartarse de la metodología impuesta en la jurisprudencia y no haber concedido el valor presente y actual del precedente base usado.

Nuestra jurisprudencia ha sido diáfana y enfática en cuanto a que la tarea de valorizar daños no es una ciencia exacta por lo cual es un ejercicio sumamente complejo. Sin embargo, con el propósito de establecer un procedimiento uniforme, nuestro Tribunal Supremo desarrolló una metodología para que los juzgadores de los hechos estimen de manera justa el valor de un daño. En ese sentido, recientemente, en *Sucn. Mena Pamias et al. v. Meléndez et al,* supra, el Tribunal Supremo aclaró que el ejercicio de valorizar daños conlleva dos (2) pasos: 1) evaluar aquellos casos comparables que serán utilizados como punto de partida para determinar las cuantías, los cuales deberán ser detallados en los dictámenes de los foros primarios y 2) evaluar las circunstancias particulares del caso ante su consideración. Es bajo estos preceptos normativos que procederemos a evaluar la *Sentencia* apelada para atender el error esgrimido.

Del dictamen se desprende que tras haber hecho un recuento procesal del caso y haber analizado la prueba, el TPI adjudicó los sufrimientos y angustias mentales del apelante en **$25,000.00**. En la nota al calce número 7 de la *Sentencia,* el TPI explicó los cálculos que llevo a cabo para obtener este resultado. En primer lugar, computó el valor adquisitivo del dólar (VAD) para la fecha cuando se

emitió el dictamen del caso base utilizado, a saber, abril de 2009.[9] El VAD se obtuvo al dividir cien (100) entre el Índice de Precios al Consumidor (IPC) para la fecha de interés (VAD = 100/IPC). Observamos que el TPI utilizó un valor de 115.887 para el IPC, lo cual resultó en un VAD de .8629 (VAD = 100/115.887).

En segundo lugar, multiplicó el VAD para abril de 2009 por la cantidad concedida en el caso precedente para obtener el valor presente de dicha partida (Valor presente = Cantidad concedida en el caso precedente x VAD del mes y año en que se dictó el precedente). A tales efectos, alcanzó un valor presente de $25,887.28 (Valor Presente = .8629 x $30,000). Por último, computó el valor actual de aludida partida al dividir el valor presente por el VAD que corresponde a la fecha que el TPI dictó su *Sentencia.*[10] Dicho cálculo, representó un valor actualizado de **$35,462.03** (Valor Actual = $25,887.28/.7300).

Ahora bien, es preciso señalar que el valor del IPC para abril de 2009 era de 106.731 y no el 115.887 que utilizó el TPI. Por tanto, al aplicar el valor de 106.731 obtenemos un VAD de .9369 y, por consiguiente, un valor actualizado de **38,502.74**.[11] Establecido lo anterior, el apelante no nos ha demostrado que la cantidad impuesta sea una exageradamente baja. Los argumentos del señor Plaza Del Valle se limitan exclusivamente a que no fue concedido el valor actualizado del caso de referencia. **No obstante, los valores actuales de partidas previas concedidas fungen como un punto de referencia y no como una indemnización obligatoria. Así, el hecho de que el TPI no haya concedido el valor actual de la partida adjudicada no implica que se haya apartado de la**

---

[9] Nótese que, el valor del IPC varía según la fecha.

[10] Señalamos que, el TPI utilizó los últimos datos disponibles a enero de 2025 (IPC 137,056), lo cual resultó en un VAD de .7300

[11] Los cómputos matemáticos fueron los siguientes: VAD para la fecha de abril 2009 = 100/106.731 = .9369; Valor presente = $30,000 x .9369 = $28,107; VAD para enero de 2025 = 100/137.056 = .7300; Valor actual = $28,107/.7300 = 38,502.74.

**metodología adoptada en nuestro ordenamiento.** Incluso, como ya hemos enunciado, el TPI llevó a cabo los cálculos matemáticos según exige la jurisprudencia. De igual forma, reiteramos que no existen dos casos exactamente iguales y que cada uno es distinguible según sus circunstancias. *Santiago Montanez v. Fresenius Medical, supra.* A tales efectos, el TPI al evaluar la prueba desfilada y los testimonios presentados en el juicio, el caso de referencia y tomando en consideración las particularidades del caso de autos, valoró los daños morales en $25,000.00. Así pues, no hemos encontrado razón por la cual intervenir con la estimación de daños que realizó el TPI. Por todo lo cual, el TPI **no** incurrió en los errores señalados.

**IV.**

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones